UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TAYLOR ACQUISITIONS, LLC,

    Plaintiff,

v.                                                                      Case No. 06-10650
                                                                       Hon. Sean F. Cox


CITY OF TAYLOR and
CAMERON G. PRIEBE,

    Defendants.
_____

## OPINION AND ORDER

This matter is before the Court on Cross-Motions for summary judgment. Both parties have briefed the issues and a hearing was held September 20, 2007. For the following reasons, the Court **GRANTS** Defendants' Motion for summary judgment; and **DENIES** Plaintiff's Motion for summary judgment. Plaintiff's Motion to strike from Defendants' Motion for summary judgment the Affidavit of Neil Silver, etc., is **MOOT**.

### I. BACKGROUND

This action arises out of the failure of the Taylor City Council to vote to approve the final site plans for Plaintiff's proposed residential development and the cancelling of Plaintiff's purchase agreement for City owned land.

Plaintiff seeks to develop residential housing in the City of Taylor. The proposed location is approximately 31 acres at Racho Road and Superior Parkway. The land is composed

of thirteen parcels, six of which are owned by the City of Taylor.

On December 16, 2003, Plaintiff began discussing with City of Taylor officials development of residential housing at the Racho Road site, to be called the "Taylor Enclaves." Plaintiff met with City officials several times. According to Plaintiff, City officials assured Plaintiff that it would enter into an agreement to sell the six City owned parcels; enter into an agreement for Brownfield development[1]; re-zone the property; and approve the project. Based on these assurances, Plaintiff invested significant amounts of money and time to develop the necessary plans. Plaintiff also entered purchase agreements, which required non-refundable deposits, with owners of the other parcels.

On July 19, 2004, the Taylor City Council voted to amend the Brownfield Plan to include Plaintiff's residential development. Plaintiff continued to prepare and revise plans for final approval by the City. On September 20, 2005, the City Council voted to approve a Brownfield Development Agreement and a purchase agreement for the six parcels of land owned by the City. In accordance with the agreements, Plaintiff submitted a $50,000 deposit to the City's escrow agent.

At the November 1, 2005 City Council hearing, the City Council took three actions: (1) it held a public hearing on Plaintiff's Brownfield Plan Amendment, but did not vote on whether to approve the resolution; (2) it voted to approve the first reading of an ordinance to amend the City's Master Plan; and (3) it voted to approve the first reading of a zoning ordinance rezoning the thirteen parcels needed for Plaintiff's project from "Regional Business" to "Townhouse

---

[1] Property approved as part of the Brownfield Plan received several incentives regarding taxes and financing.

Residential/Planned Unit Development" ("PUD"). The second vote was planned for November 15, 2005.

On November 8, 2005, Defendant Cameron Priebe ("Priebe") defeated incumbent City of Taylor Mayor, Gregory Pitoniak. Three incumbent City Council members were also defeated.

While running for office, Priebe attended meetings and allegedly disrupted proceedings related to Plaintiff's development. Plaintiff claims Priebe demonstrated an "unjustified animosity toward the project." Following his election, Priebe moved up the swearing in date of the new elected officials, allegedly in order to prevent a final vote on Plaintiff's development. On November 15, 2005, rather than vote on Plaintiff's development, the City Council chose to table the issue until the following meeting on December 5, 2006. However, on December 1, 2005, Plaintiff received a letter from counsel for the City stating that it was terminating the purchase agreement for the six City owned parcels of land. Plaintiff's deposit, with interest, was refunded.

At the December 5, 2005, City Council meeting, Plaintiff's project was not on the agenda. Mayor Priebe allegedly advised citizens at the end of the meeting that the project was "dead." No vote for final approval of Plaintiff's project was held.

On February 14, 2006, Plaintiff filed a Complaint against the City of Taylor and Mayor Priebe alleging: (1) violation of its procedural and substantive due process rights; and (2) denial of equal protection. Plaintiff's due process claims were dismissed on October 27, 2007, pursuant to a motion to dismiss. The only remaining claim is Plaintiff's claim for denial of equal protection.

**II. STANDARD OF REVIEW**

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

### III. ANALYSIS

The only claim at issue in this case is whether Defendants violated Plaintiff's right to equal protection when the purchase agreement was cancelled and Defendants refused to hold a second vote on the project.

As a preliminary matter, Defendants argue, for the first time, that the purchase agreement was void by its own terms because it was not executed by July 22, 2005, thus precluding a claim for denial of equal protection. The purchase agreement was not executed until September 20, 2005, when it was approved by a vote of the City Council. Defendants' argument is unavailing. All parties proceeded as if the purchase agreement were binding after July 22, 2005, until Defendants sent a letter indicating that the purchase agreement was rescinded in December 2005. Defendants are estopped from now asserting that the purchase agreement was void on July 22,

4

2005.

Under the Equal Protection Clause of the Fourteenth Amendment, no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). "To establish a claim for relief under the Equal Protection Clause, a plaintiff must demonstrate that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Club Italia Soccer & Sports Organization, Inc. v. Charter Township of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006).

In this case, Plaintiff proceeds under the so-called "class of one" theory, and must prove that Defendant's actions lacked any rational basis. *Id*. "A 'class of one' plaintiff may demonstrate that government action lacks a rational basis either by negativing every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will." *TriHealth, Inc. v. Board of Commissioners, Hamilton County*, 430 F.3d 783, 788 (6th Cir. 2005). To prevail, a plaintiff must demonstrate "that the differential treatment they were subjected to is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the [government's] actions were irrational." *Id*. "Under rational basis review, the [government] has no obligation to produce evidence to sustain the rationality of its actions; its choice is presumptively valid and may be based on rational speculation unsupported by evidence or empirical data." *Club Italia*, 470 F.3d at 298 (citation omitted). "The burden falls squarely to the plaintiff, who must overcome the

5

presumption of rationality by alleging that the defendant acted in a manner clearly contrary to law." *Id*.

    **A.**    **Was Plaintiff Intentionally Treated Differently From Others Similarly Situated?**

Plaintiff argues that the relevant comparison for the similarly situated analysis is "other developers who interacted with the City of Taylor." [Motion, p.4]. According to Plaintiff it was treated differently because "at no time prior to, or since, has any developer been denied a second reading by the Taylor City Council after having been reviewed by and approved by all of the relevant City Boards and commissions...other than the Taylor Enclaves project, at no time prior to, or since, has a Mayor unilaterally rescinded a construction contract which had been previously approved or ratified by the Taylor City Council." *Id*. Plaintiff cites the declaration and testimony of several individuals who stated that the mayor had never before unilaterally rescinded a purchase agreement, and had never seen a housing development project go through all of the approval processes including a first reading before the City Council, and then be denied the opportunity for a second reading. [Motion, Exhibits 5, p.10; Exhibit 11, ¶¶34-35; Exhibit 16, ¶¶38-39]. Whether individuals are similarly situated is a question of fact. *McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004); and *Graham v. Long Island Rail Road*, 230 F.3d 34, 39 (2nd Cir. 2000).

Defendant relies on an affidavit from Frederick Zorn, the former Director of Economic Development for the City of Taylor to demonstrate that Plaintiff is not similarly situated to any other residential developers. Zorn was employed by the City of Taylor from February 1997 to July 2005. He avers that Plaintiff's Taylor Enclaves project was unique compared to other

residential developments because:

  (a)  It was the only residential development in the City of Taylor which was contrary to the City's Master Plan and which required a changing of the City's Master Plan for the development to go forward;

  (b)  It was the only residential development project since 2001 which required the City to rezone the property from business/commercial to residential, in order for the development to go forward;

  (c)  It was the only residential development that was on property that the City had planned for the future expansion of the Southland Shopping Mall;

  (d)  It was the only residential development that came to the City for approval at a time when it was becoming clear that the residential housing market was failing dramatically; and

  (e)  It was the only residential development that came before the current administration and City Council for approval.

[Motion, Exhibit I]. Defendants also point out that Deborah Johnson, Vice-President of Taylor Acquisitions testified that there were no other projects similarly situated to the Taylor Enclaves project. [Motion, p.12]. But, a reading of the deposition transcript reveals that Johnson was talking about the particular style of the housing, i.e. three story stacked ranches. Defendants do not offer any support that in order to be "similarly situated" for purposes of an equal protection analysis, the housing projects must be of the exact same architectural style. Particularly in this case, where it does not appear that the particular style had anything to do with the Mayor's decision to rescind the purchase agreement or the denial of a second reading before City Council.

  Plaintiff challenges Zorn's assertions. Plaintiff cites several residential housing projects that it argues also required re-zoning and changes to the City's Master Plan. [Response, pp. ix-x and Exhibit 4]. However, Plaintiff does not identify if the projects were similarly situated, i.e., that they were similar to the Plaintiff's project and successfully went through the approval

7

processes. Finally, Plaintiff argues that Defendant Priebe has subsequently approved a development agreement for a PUD of condominiums in the City of Taylor, but does not identify how this project is similarly situated.

At the hearing, Plaintiff conceded that there were insufficient facts to make a determination if the other projects mentioned by Plaintiff were similarly situated. Plaintiff also alleged for the first time at the hearing, that Plaintiff had been waiting for records to be produced by Defendants in order to support its claim that other developers were similarly situated and treated differently. However, as Plaintiff pointed out, Plaintiff did not offer any supplemental authority when that discovery was received. Further, if Plaintiff was in need of additional discovery in order to properly respond to Defendants' Motion for summary judgment, it was required to file an affidavit pursuant to Fed.R.Civ.P. 56(f):

> Should it appear from the affidavits of a party opposing the [summary judgment] motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

This rule has been interpreted to require that a party "indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000). Plaintiff did not file a Rule 56(f) affidavit, and did not by any other means indicate to the court a need for discovery, what material facts would be discovered, and why it had not previously been discovered. Thus, the lack of information for a determination of whether the developers Plaintiff mentioned were similarly situated and treated differently, is not a basis to deny Defendants' request for summary judgment.

"[S]imilarly situated individuals must be very similar indeed." *McDonald*, 371 F.3d at 1002. See *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1367-1368 (11th Cir. 1998)("[w]ith regard to the similarly situated prong, the complaint does not present a single instance in which a similarly situated developer was granted a permit; it merely alleges that nameless, faceless other permit applicants were given better treatment. Bare allegations that other applicants, even all other applicants, were treated differently do not state an equal protection claim."). Based on the evidence presented to the court, the bare assertion that several developments before Defendants were treated differently is insufficient to support a claim for violation of equal protection. Thus, Defendants are entitled to summary judgment.

**B.     Did Defendants' Actions Lack a Rational Basis?**

Even if Plaintiff could establish a genuine issue of material fact regarding whether it was treated differently than others similarly situated, Plaintiff fails to establish that Defendants' lacked a rational basis for their actions. A plaintiff can establish the lack of a rational basis either by "negativing every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will." *Club Italia*, 470 F.3d at 298.

Defendants claim that their actions were because: (1) there were too many multi-family residential developments in various stages of construction in the City; (2) too much of the City's green space and wooded areas were being sold off; (3) there was an oversaturation of residential housing in the City that was not selling, leading to a decrease in the value of existing homes; and (4) the vacant homes created an unsightly and unsafe condition in the community. [Motion, p.16, citing Exhibit G and H]. Defendants also present the Affidavit of Zorn, who averred that too

many residential homes were being constructed and not sold. [Motion, Exhibit I]. Zorn included a chart of the various residential developments and the number of unsold units. *Id*.

Plaintiff attempts to negative the assertions Defendants made for failing to allow Plaintiff to proceed with its project by arguing that Defendants "have failed to provide to this Court any evidence which was not created by defendants for this case, or which was contemporaneous with defendants' actions." [Response, p.12]. As stated above, Defendants have no burden to sustain the rationality of their choices; the burden falls to Plaintiff to demonstrate the irrationality. *TriHealth*, 430 F.3d at 790-791. Defendants are under no obligation to present any evidence to support their decision, so the argument that some of the evidence presented is insufficient is irrelevant. Plaintiff also relies on the declaration of former City Council member James Riddle and former mayor Greg Pitoniak. While their declarations may raise a question of fact as to several of the Defendants' proposed reasons for terminating Plaintiff's project, it does not negative every basis offered, or every conceivable basis. Plaintiff fails to carry its "heavy burden" of negativing every conceivable basis for Defendants' decision. *Id*.

Plaintiff also argues that there is evidence that Defendants were motivated by animus or ill-will. Plaintiff cites Defendant Priebe's deposition, where he admitted that he came to the October 5, 2005 Planning Commission meeting. [Motion, Exhibit 3, pp.56-58]. Priebe admitted that he asked the Planning Commission to delay any action on Plaintiff's development until after the new administration took office, if elected. *Id*. Plaintiff also relies on the declaration of Christopher Kemp, a former member of the Taylor City Council. [Exhibit 16]. Kemp was also the City Council representative on the City of Taylor Planning Commission. Kemp characterizes the October 5, 2005 exchange between Defendant Priebe and the Planning Commission as

"contentious." *Id*. He claims Priebe asked the Planning Commission to "put the brakes" on Plaintiff's project. *Id*.

After the approval by City Council of the Taylor Enclaves project on November 1, 2005, Defendant Priebe was elected and took office on November 14, 2005. Plaintiff alleges Defendant Priebe violated the City's Charter by taking office two weeks early in order to prevent the approval of Plaintiff's project at a second reading of City Council scheduled for November 15, 2005. The November 15, 2005 vote was tabled until December 6, 2005. However, the second reading of the Taylor Enclaves project was not put on the agenda for the December 6, 2005 City Council meeting. On December 1, 2005, Defendants issued a letter rescinding the purchase agreement between the City and Plaintiff. Plaintiff claims the unilateral decision to rescind the purchase agreement was made by Defendant Priebe, without the required approval of City Council. Sam Blumenstein, President of Taylor Acquisitions, claims he contacted the City and individual City Council members to have the Taylor Enclaves project put back on the City Council agenda, to no avail. [Motion, Exhibit 10, ¶¶29-30]. Taylor City Council member Gregory Bzura averred that he was asked by Blumenstein how to get the project back on the City Council agenda and he told Blumenstein that Defendant Priebe would not allow the matter to be placed back on the agenda. [Motion, Exhibit 11, ¶29]. Plaintiff argues that never before, or since, has Priebe unilaterally rescinded a purchase agreement with a developer, or allowed a project to go through all of the processes only to be denied the opportunity for a second reading before City Council. [Motion, Exhibits 5, p.10; Exhibit 11, ¶¶34-35; Exhibit 16, ¶¶38-39].

The evidence presented by Plaintiff does not establish that Defendant Priebe acted with animus or ill-will towards *Plaintiff*. Plaintiff's evidence, if believed, establishes that Defendant

11

Priebe was diligent, and perhaps acted without authority, in stopping Plaintiff's *project* from proceeding. However, Plaintiff does not offer any evidence that the motivation for stopping the project was animus or ill-will towards Plaintiff, rather than a belief that the project was not in the best interests of the City. As noted above, Defendants assert: (1) there were too many multi-family residential developments in various stages of construction in the City; (2) too much of the City's green space and wooded areas were being sold off; (3) there was an oversaturation of residential housing in the City that was not selling, leading to a decrease in the value of existing homes; and (4) the vacant homes created an unsightly and unsafe condition in the community. [Motion, p.16, citing Exhibit G and H]. Defendant Priebe alleges it was a platform of his campaign to stop the selling off of City property for residential developments such as Plaintiff's . Notably, Johnson, Vice -President of Taylor Acquisitions, testified that she did not believe Priebe had any intention to discriminate against Plaintiff, but rather would have behaved the same towards whatever developer was developing that assemblage of properties. [Response, Exhibit E].

"A government action is considered irrational only if it is unrelated to the achievement of any combination of [] legitimate purposes." *Scarbrough v. Morgan County Board of Educ.*, 470 F.3d 250, 261 (6th Cir. 2006). Plaintiff's evidence demonstrates that Defendant Priebe acted, at least in part, with the legitimate purpose to stop a residential development he believed was not in the best interests of the City. In an unpublished case, the Sixth Circuit cited several similar cases:

> To demonstrate animus or ill will under *Olech*[2], a plaintiff must prove that the challenged government actions were motivated by personal malice unrelated to the defendant's official duties. *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000); see also *Bower*, 44 Fed.Appx. at 678 (finding that plaintiff presented an *Olech* claim when he alleged that a mayor manipulated police hiring procedures to deny plaintiff a full-time job because of the plaintiff's family ties); *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001)(stating that plaintiff can present a 'class of one' claim by showing "that the state government took an action that was a spiteful effort to "get" him for reasons wholly unrelated to any legitimate state objective.")...Because [the plaintiff] does not allege any facts or produce evidence suggesting that defendants harbored any personal animus toward him, he does not raise a genuine issue of material fact concerning animus in support of his *Olech* claim.

*Klimik v. Kent County Sheriff's Department*, 91 Fed.Appx. 396, 401 (6th Cir. 2004).

Likewise, in this case, Plaintiff fails to create a genuine issue of fact concerning whether Defendants acted with personal animus towards Plaintiff. Rather, Plaintiff's evidence at most demonstrates an animus towards the project - based on legitimate government concerns.[3] It cannot be that a strong desire to stop a particular project, where there is no evidence that the desire is based on animus towards the purveyors of the project, rises to the level of a constitutional violation.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim for violation of the Equal Protection Clause of the Fourteenth Amendment. Additionally, because the court did not consider the Affidavit of Neil Silver in its ruling, Plaintiff's Motion to strike from Defendant's Motion for summary judgment the Affidavit of Neil Silver is moot. The court does not reach Defendants' argument regarding qualified immunity.

---

[2] *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000); seminal U.S. Supreme Court case regarding "class of one" equal protection claims.

[3] The Court does not decide whether the proffered concerns were justified, only that they were legitimate government concerns.

13

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for summary judgment; and **DENIES** Plaintiff's Motion for summary judgment.  Plaintiff's Motion to strike from Defendants' Motion for summary judgment the Affidavit of Neil Silver, etc., is **MOOT**.

**IT IS SO ORDERED.**

**S/Sean F. Cox**
**Sean F. Cox**
**United States District Judge**

**Dated:  September 27, 2007**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on September 27, 2007, by electronic and/or ordinary mail.**

**S/Jennifer Hernandez**
**Case Manager**